**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| TRACY LIND and STEVE LIND, | Civil No. 11-1242 (JRT/LIB) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| MIDLAND FUNDING, L.L.C., MESSERLI & KRAMER, P.A., and DERRICK WEBER, | |
| Defendants. | |

Nicholas P. Slade, **BARRY & SLADE, L.L.C.**, 2021 East Hennepin Avenue, Suite 195, Minneapolis, MN 55413, for plaintiffs.

Derrick N. Weber and Jennifer M. Zwilling, **MESSERLI & KRAMER P.A.**, 3033 Campus Drive, Suite 250, Plymouth, MN  55441, for defendants.

Tracy and Steve Lind ("the Linds") brought the instant complaint alleging

defendants Midland Funding, L.L.C. ("Midland"), Messerli & Kramer, P.A. ("M&K"),

and Derrick Weber (collectively, "defendants") violated their due process rights and the

Fair Debt Collection Practices Act ("FDCPA") when they attached funds in the Linds'

joint bank account after the bank only sent notice to Steve Lind.  Defendants move to

dismiss.  Because the Court finds the Linds had constitutionally sufficient notice, were

offered a hearing, and failed to allege state action, the Court dismisses the due process

claim.  Further, because the pleading does not clearly allege an independent violation of

the FDCPA aside from the due process claim, the Court dismisses the FDCPA claim.

With no underlying controversy, the Court declines to address the constitutionality of the garnishment statute as it applies to the Linds, as sought in the declaratory judgment claim.

## BACKGROUND

The Linds brought the instant action, alleging that defendants violated their right to due process and the FDCPA, 15 U.S.C. §§ 1692-1692p, in connection with credit card debt owed by Steve Lind to Bank of America that was purchased by Midland Funding, and assigned to M&K for collection.  (Am. Compl. ¶¶ 9-11, Docket No. 10.)  Midland filed suit in state court against Steve Lind for the debt and received a default judgment in the amount of $11,410.90.  (*Id.* ¶¶ 13-15.)    Thereafter, M&K and Midland served a garnishment summons on First National Bank of the North ("FNB") for accounts in the name of Steve Lind, including one that was a joint account of the Linds.  (*Id.* ¶¶ 20-21.) FNB sent notice to Steve Lind that the funds in the accounts were now attached, pursuant to Minnesota's garnishment statutes.  (Aff. of Derrick N. Weber, Ex. F, June 3, 2011, Docket No. 6); *see* Minn. Stat. §§ 571.911-.915.  The notice was sent to the address Steve Lind shared with Tracy Lind and it explained the procedure for claiming exemption. (Weber Aff., Ex. F, Docket No. 6.)  Tracy Lind did not receive a garnishment notice in her name, but she was fully aware of the notice sent to Steve Lind, and she sought legal counsel immediately.  (Am. Compl. ¶¶ 32-35, 43, Docket No. 10.)

The Linds aver that the money in the joint account was Tracy Lind's, or was unemployment compensation paid to Steve Lind, and therefore not subject to

garnishment.  (*Id.* ¶¶ 36-39.)  In response to the notice, the Linds claimed exemption, to which defendants objected and an exemption claim hearing was scheduled in Pine County Court.  (*Id.* ¶ 73.)  At the hearing, the judge ordered the parties to discuss settlement prior to the hearing, and the parties reached an agreement that, of the $1,339.72 attached to the accounts, defendants would keep $500 and the remainder would be returned to the Linds.  (Weber Aff., Ex. K, Docket No. 6.)  As a result, the exemption claim hearing was cancelled.

The Linds argue their rights to due process were violated because Tracy Lind did not receive notice in her name of the garnishment of the joint account and because the money was attached before a hearing.  Further, the Linds claim that the actions of defendants in reaching this settlement were unfair, deceptive, harassing and abusive attempts to collect a debt, in violation of several sections of the FDCPA.  They seek a declaratory judgment that the Minnesota garnishment statute is unconstitutional. Defendants move to dismiss.

**ANALYSIS**

**I.      STANDARD OF REVIEW**

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party.  *See, e.g.*, *Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002).  To survive a motion to dismiss a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action . . . .'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).   That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Id.* (internal quotation marks omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted).   At the motion to dismiss stage, the record for review before the Court is generally limited to the complaint and any documents attached as exhibits that are necessarily embraced by the complaint.   *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## II.   MINNESOTA'S GARNISHMENT STATUTES

The Minnesota Supreme Court explained the process dictated by Minnesota's garnishment statutes on a certified question.   *Savig v. First Nat. Bank of Omaha*, 781 N.W.2d 335 (Minn. 2010); *see* Minn. Stat. §§ 571.71 to 571.932.

> Garnishment is "an ancillary proceeding to a civil action for the recovery of money."   Minn. Stat. § 571.71.   The process begins with a creditor [Midland] serving a garnishment summons and disclosure form on a garnishee [FNB]; copies of the summons and disclosure form are also served on the debtor [Steve Lind].   Minn. Stat. § 571.72, subds. 2, 4, 5.   If the debtor is a natural person and the funds to be garnished are held on deposit [attached] in a financial institution (the garnishee), the creditor must also send an exemption notice with the garnishment summons to the debtor and garnishee.   *See* Minn. Stat. § 571.72, subds. 4, 8.   Within two business days of receiving the summons and exemption notice, the garnishee must

serve upon the debtor two copies of the exemption notice so that the debtor may claim an exemption. Minn. Stat. § 571.913. In addition, the garnishee must complete the disclosure form, indicating the garnishee's indebtedness, money, or other property owing to the debtor, and serve the written disclosure upon the creditor and the debtor. Minn. Stat. §§ 571.72, subd. 2(3); 571.75, subd. 1. The garnishee must also retain the amount it has on deposit owing to the debtor, but not more than 110 percent of the creditor's claim. Minn. Stat. § 571.911.

*Savig*, 781 N.W.2d at 338-39. The Linds allege that this statutory process, standing alone and as applied to the facts of their case, is unconstitutional, violated their rights to due process, and violated the FDCPA.

## III.    SUBJECT-MATTER JURISDICTION

Defendants argue that the Court lacks subject matter jurisdiction based on the *Rooker-Feldman* doctrine. Questions of jurisdiction should be addressed before all other issues since "[w]hen it clearly appears that the court lacks jurisdiction, the court has no authority to reach the merits. In such a situation the action should be dismissed for want of jurisdiction." *Melo v. United States*, 505 F.2d 1026, 1030 (8ᵗʰ Cir. 1974).

"The *Rooker–Feldman* doctrine [bars] cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine "stands for the general principle that . . . lower federal courts lack subject matter jurisdiction to review state court judicial decisions." *Prince v. Ark. Bd. of Exam'rs in Psychology*, 380 F.3d 337, 340 (8ᵗʰ Cir. 2004); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–83 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415–16

(1923).  Litigants may not pursue federal claims with allegations that are "inextricably intertwined" with a state court decision.  *Feldman*, 460 U.S. at 483 n.16.  Federal claims are inextricably intertwined with the state court judgment if they "succeed[] only to the extent that the state court wrongly decided the issue before it."  *Lemonds v. St. Louis Cnty.*, 222 F.3d 488, 493 (8th Cir. 2000) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).  "Once a party has litigated in state court . . . he cannot circumvent *Rooker-Feldman* by recasting his or her lawsuit as a [section] 1983 action."  *Prince*, 380 F.3d at 341 (alteration original) (quotation marks omitted) (citing *Bechtold v. City of Rosemount,* 104 F.3d 1062, 1065 (8th Cir. 1997)).

It is not clear from the state court record, however, that the cancelation of the exemption hearing and docketing of the settlement agreement constitutes a final decision by the state court.  The settlement paper in the record has no judicial stamp or signature from the judge.  (*See* Weber Aff., Ex. K, Docket No. 6.)  The *Feldman* Court, in analyzing Supreme Court precedent on whether an action was judicial or administrative, found an action to be judicial because "[a]lthough no entry was placed by the Clerk in the file, on a docket, or in a judgment roll, we found that the state court had taken cognizance of the petition and passed an order which was validated by the signature of the presiding [judicial] officer."  *Feldman*, 460 U.S. at 478 (internal quotation marks, citations, and alterations omitted).  The Supreme Court has noted that "[t]he form of the proceeding is not significant.  It is the nature and effect which is controlling."  *In re Summers*, 325 U.S. 561, 567 (1945) (denying the Illinois Supreme Court's administrative characterization of

its refusal to admit a person to the bar based on conscientious objector status and finding the case conferred federal jurisdiction).

Given the lack of clarity from the state court record, the absence of a judicial signature on the settlement, and the fact that the exemption hearing was simply cancelled in response to the settlement, the Court concludes the settlement is more akin to a voluntary dismissal without prejudice by the parties than a judicially approved settlement of the claims.  As a result, the Court determines the settlement does not constitute a final decision of the state court that would invoke the *Rooker-Feldman* doctrine and the Court has jurisdiction to hear the claims.

## IV.   DUE PROCESS

The Linds assert that they were not afforded due process in the garnishment process because notice was only sent in the name of Steve Lind and because the hearing on the matter occurred after the attachment of the funds.  "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'"  *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (citing *Baldwin v. Hale*, 68 U.S. 223, 233 (1863)).  To be constitutionally adequate, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Baldwin v. Credit Based Asset Servicing and Securitization*, 516 F.3d 734, 737 (8th Cir. 2008) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

The Linds assert Tracy Lind received no notice of the garnishment because the notice that FNB sent came in Steve Lind's name.  Courts have found that notice to only one account holder can be constitutionally deficient if it is not "reasonably calculated" to reach the joint account holder.  For example, the Third Circuit found that a woman who had been divorced from her husband for nine years, lived in a different state from her ex-husband, and received no notice of an Internal Revenue Service tax levy on a joint account they still held as a result of the divorce decree, had stated a due process claim after she discovered the account had been closed.  *Scheafnocker v. C.I.R.*, 642 F.3d 428, 436 (3d Cir. 2011) ("We conclude that these facts amply plead a claim that the government violated the constitution by failing to provide her notice that was reasonably calculated to apprise her of the levy.").  However, absent such extreme situations, courts have generally held that "[d]ue process is satisfied by mailing a single notice to joint account holders because that notice is 'reasonably calculated' to give actual notice to both."  *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 106 (Bankr. S.D.N.Y. 1997).  This holding is particularly so in the case of co-habitating spouses because "[t]he only difference is that instead of opening just one envelope, the [couple] will open two envelopes containing identical papers."  *In re Tornheim*, 181 B.R. 161, 168 (Bankr. S.D.N.Y. 1995) (addressing service requirements of the Federal Rules of Civil Procedure, and finding singular notice constitutionally sufficient).  Furthermore, "a person cannot complain about the constitutionality of the method used to provide notice when he or she has received **actual** notice (assuming it is timely), for he or she has suffered no harm." *Nunley v. Dep't of Justice*, 425 F.3d 1132, 1139 (8th Cir. 2005) (emphasis added).

As an initial matter, the Linds make no assertion that Steve Lind's notice of the garnishment was insufficient. Furthermore, the complaint describes in great detail the manner in which Tracy Lind availed herself of the procedures to protest the garnishment. She contacted an attorney (Am. Compl. ¶ 43, Docket No. 10), learned about Minnesota's garnishment procedures (*id.*), mailed numerous statements to defendants detailing her exemptions claims (*id.* ¶¶ 47-58), attended a court hearing on the issue (*id.* ¶ 76), for which she sought the advice of counsel (*id.* ¶¶ 74-75), and participated in a settlement of the dispute. (*Id.* ¶¶ 78-89.) Regardless of whose name was on FNB's notice, it strains credulity to argue Tracy Lind had no actual notice of the garnishment given her active participation in the proceedings as pled in the complaint.[1] As a result, the Court finds both Steve and Tracy Lind received notice that was "reasonably calculated" to reach them both and that Tracy Lind suffered no harm since she had actual notice and participated in the proceedings. The Court agrees that there may be a case where the Minnesota garnishment statute is subject to challenge by joint account holders on the issue of notice, but this is not such a case.

The Linds argue that their due process rights were violated because the attachment occurred before notice of the garnishment was sent. However, "[t]he usual rule [of due

---

[1] The Court notes, without finding, that the Linds may also have waived a right to different notice when they opened the bank account and agreed to singular notice. The paperwork they signed with FNB states: "Notice from us to any one of you is notice to all of you." (Weber Aff., Ex. P at 2, Docket No. 6.) "The United States Supreme Court has explicitly recognized that due process rights to notice and a hearing may be waived." *Whitfield v. Pub. Hous. Agency of City of Saint Paul*, No. 03-6096, 2004 WL 2801589, at *3 (D. Minn. Dec. 7, 2004) (citing *D.H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 184-85 (1972)).

process] has been [w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate." *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 611 (1974) (citing *Phillips v. Comm'r*, 283 U.S. 589, 596-97 (1931)). Essentially, "some kind of hearing is required at some time before a person is **finally** deprived of his property interests." *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974) (emphasis added).

Here, the Linds took advantage of the post-attachment procedures and attended the court date scheduled to allow them a hearing on the merits. The hearing was scheduled on January 31, 2011, twenty-eight days after the garnishment. (Am. Compl. ¶¶ 36, 73, Docket No. 10.) They chose to settle the claim. To the extent that they were deprived a post-garnishment hearing, they waived their right to one by settling the case and cancelling the hearing. *Whitfield*, 2004 WL 2801589, at *3. Therefore, the Court finds the hearing requirement of due process satisfied in this case.

Furthermore, regardless of the notice and hearing issues, the Linds have failed to adequately plead state action necessary for a due process claim. The Supreme Court articulated a two-part test to determine state action.

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state [such as] a state statute provid[ing] the right to garnish or to obtain prejudgment attachment, as well as the procedure by which the rights could be exercised. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

While the Minnesota garnishment statute satisfies the first prong for state action, in *Savig v. First Nat. Bank of Omaha*, No. 09-132, 2011 WL 883642, at *2 (D. Minn. Mar. 11, 2011), the court expressly held that private actors operating under Minnesota's garnishment statute are not state actors under the *Lugar* Court's "fairly attributable" test. As a result, even if the Court were to find the notice was deficient, and the hearing was insufficient, the Linds have failed to properly allege state action necessary to state a claim. Therefore, the Court dismisses the Linds' due process claim.

## V.     FDCPA

The Linds allege the behavior of the defendants violates "numerous and multiple provisions of the FDCPA including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1) amongst others." (Am. Compl. ¶ 71, Docket No. 10.)  However, § 1692d, for example, prohibits a debt collector from "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person" and "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader."  The complaint alleges no actions or words by the defendants that, even in a light most favorable to the Linds' claims, could accord with this statute.  In fact, the complaint makes **no** specific allegations regarding behaviors that would violate these statutes. Instead, the complaint alleges "labels and conclusions" which cannot survive a motion to dismiss.  (*See* Am. Compl. ¶ 42, Docket No. 10 ( Defendants [sic] actions seizing Tracy Lind's funds in their attempts to collect a debt that she did not owe was [sic] unfair and

abusive in violation of numerous provisions of the [FDCPA] . . . .")); *see Twombly*, 550 U.S. at 555.

The Linds argue that the claim survives because the absence of due process violates the FDCPA.  However, the Court has already concluded that the pleadings do not establish a viable due process claim.  Furthermore, even if the debt collection activities at issue in this case were unconstitutional under state law, they would not necessarily constitute a per se violation of the FDCPA.  "[N]ot . . . all debt collector actions in violation of state law constitute *per se* violations of the FDCPA.  Rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010).  To the extent the Linds argue the garnishment statute is unconstitutional under the Minnesota Constitution, to successfully plead that this violation also constitutes a violation of the FDCPA they must independently allege facts and actions that violate the FDCPA.  The complaint does not so allege.  Additionally, on a certified question, the Minnesota Supreme Court specifically addressed the constitutionality of Minnesota's garnishment statutes, Minn. Stat. § 571.71-571.932, as they apply to joint account holders and found them to be constitutional.  *Savig*, 781 N.W.2d at 341.  As a result, the Court dismisses the FDCPA claim.

Because neither of the Linds' underlying claims survive, the Court declines to consider a declaratory judgment that Minnesota's garnishment statutes are unconstitutional because the Court does not have jurisdiction to do so without a justiciable claim.  *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, No. 10-11010, 2011

WL 1332039, at *2 (5th Cir. Apr. 7, 2011) ("In a declaratory judgment action, the parties litigate the underlying claim, and the declaratory judgment is merely a form of relief that the court may grant.").

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, defendants' Motion to Dismiss/General [Docket No. 4] is **GRANTED.** The Amended Complaint *First* [Docket No. 10] is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   September 8, 2011                            ____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                    JOHN R. TUNHEIM
                                                      United States District Judge